UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA WILDLIFE FEDERATION,
et al.,

    Plaintiffs,

v.                                                                         CASE NO. 8:13-cv-2084-T-23EAJ

GINA MCCARTHY, et al.,

    Defendants.
_____/

**ORDER**

    The Clean Water Act reserves to each state the power to enact policy designed to improve the quality of the state's water. Section 303 of the Act grants the United States Environmental Protection Agency authority to review and to approve or reject the state's new or revised water quality standard and the state's list of "impaired waters." But a state retains discretion to enact and to enforce — without EPA's review and approval — both a method of identifying impaired waters and an antidegradation policy.

    In 2001, Florida adopted the Impaired Waters Rule (IWR), which establishes a method to identify impaired waters and which is unreviewable by the EPA. But in 2005, the EPA found that a portion of the IWR in effect constituted a reviewable new or revised water quality standard. In 2008, the EPA reviewed and approved — as a new or revised water quality standard — that portion of the IWR.

In this action, the plaintiffs argue that the EPA must review not just the portion of the IWR that constitutes a new or revised water quality standard but the entire IWR.  But the plaintiffs fail to establish (or even to argue) that the entire IWR is either a reviewable new or revised water quality standard or a reviewable list of impaired waters.  Instead, the plaintiffs argue that the EPA's statutory authority to review a new or revised water quality standard implies the authority to review other provisions in the same set of regulations, even an otherwise unreviewable methodology or an otherwise unreviewable antidegradation policy.

Also, the plaintiffs argue that, because the IWR lacks an "antidegradation methology," the EPA must disapprove the IWR, a new or revised water quality standard that is allegedly "inconsistent with" Florida's antidegradation policy.  However, the plaintiffs fail to explain why, under Florida's antidegradation policy, a new or revised water quality standard must contain an "antidegradation methology."

Because the plaintiffs' arguments lack support under the Clean Water Act, the EPA's motion for summary judgment is granted.  A detailed explanation follows.

**BACKGROUND**

In 2001, the FDEP adopted the IWR, Chapter 62-303, Florida Administrative Code, which "establishes a methodology to identify" "impaired surface waters."  On remand from the Eleventh Circuit,[1] *Florida Public Interest Research Group Citizen Lobby*

---

[1] The Eleventh Circuit directed the district court to determine "what effect, if any, the [IWR] had on Florida's water quality standards." *Florida Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1082 (11th Cir. 2004).

- 2 -

*Inc. v. EPA*, No. 4:02-cv-408, Doc. 100 at 2 (N.D. Fla. Apr. 8, 2005) (Stafford, J.), orders the EPA to "determine whether the IWR, or any [portion] thereof, constitutes a new or revised water quality standard." In response, the EPA determined in the "2005 Decision" (Doc. 53-5) that a "certain portion[] of the IWR [is a] new or revised water quality standard[]," which requires review. After reviewing that portion, the EPA decided to disapprove the reviewed portion "on procedural grounds."[2] (Doc. 53-5 at 1)

After correcting the procedural fault and amending the IWR's substance, the FDEP submitted an amended IWR to the EPA for review. The "2008 Decision" (Doc. 53-7) confirms that the FDEP corrected the procedural fault.[3] Discussing the substantive amendments to the IWR, the 2008 Decision states (1) that the EPA "was not revisiting [the portion] of the [IWR] that had not changed since EPA's 2005 review of the Rule," (2) that the EPA reviewed the amended IWR portion "to determine whether . . . [the] amended [portion] effected a change" to Florida's water quality standard, and (3) that the EPA "approved the [portion] of the amended IWR that" constitutes a new or revised water quality standard. (Doc. 53 at 11–12; Doc. 53-7 at 4)

---

[2] The EPA held that the FDEP failed under 40 C.F.R. § 131.5(a)(3) to "follow its legal procedures for revising or adopting standards." Section 120.54(3)(a)(1), Florida Statutes, describes Florida's rulemaking procedure.

[3] The plaintiffs agree that the FDEP "adopted the entire [amended] IWR . . . using the rulemaking procedures required by Section 120.54(3)(a)(1), [Florida Statutes]." (Doc. 50 at 15)

The plaintiffs sue (Doc. 47) three defendants (collectively, the EPA) under Sections 706(2)(A) and (2)(C), Administrative Procedures Act.[4] The plaintiffs and the EPA each move (Docs. 50, 53) for summary judgment. The FDEP intervenes as a defendant.

## DISCUSSION

The plaintiffs argue that, in reviewing the amended IWR, the EPA (1) violated Section 303(c), Clean Water Act, which requires the EPA to review Florida's water quality standard, and (2) violated Section 303(d), which requires the EPA to review Florida's list of "impaired waters." The plaintiffs argue that, because of these violations, (1) the 2008 Decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under Section 706(2)(A), Administrative

---

[4] 5 U.S.C. § 706 states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) . . . ;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .

- 4 -

Procedures Act, and (2) the 2008 Decision is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under Section 706(2)(C).

**1. Section 303(c)**

The plaintiffs argue that under Section 303(c), which requires the EPA to review Florida's water quality standard, the EPA must review the entire amended IWR. However, the plaintiffs fail to argue that the entire amended IWR is a new or revised water quality standard. Finding that no portion of the IWR "formally . . . establish[es]" a new or revised water quality standard, the Eleventh Circuit ordered EPA review of the IWR to the extent the rule would "*in effect* . . . create[ a] new or revised water quality standard[]." *Florida Pub. Interest*, 386 F.3d at 1090. Further, on remand, *Florida Public Interest*, No. 4:02-cv-408, Doc. 185 at 22, concluded that, "as to [the portion] found by the EPA to have no effect on Florida's water quality standard[,] . . . EPA review under Section 303(c) is *not* required." Therefore, the EPA correctly reviewed only the portion of the amended IWR that constitutes a new or revised water quality standard.

Arguing that the EPA must review the entire amended IWR, the plaintiffs cite a letter in which the "FDEP [allegedly] formally and officially requested [that the] EPA review and approve FDEP's entire [amended] IWR . . . ." (Doc. 50 at 16–17) However, review of the letter reveals that the FDEP submitted to the EPA for review "three sets of rule amendments." (Doc. 24-6 at 1) The FDEP attached to the letter

"a clean version of [the amended IWR]" only "[f]or ease of review."[5] Also, as intervenor, the FDEP states that the plaintiffs "incorrectly argue that EPA should have performed a [Section] 303(c) review on the entire [amended] IWR." (Doc. 70 at 1) The plaintiffs' argument that under Section 303(c) the EPA must review the entire amended IWR is baseless.

**2. Section 303(d)**

The 2008 Decision finds that no portion of the IWR "relates to" Florida's antidegradation policy, which prevents "further degradation" of a water body. *See PUD No. 1 of Jefferson Cnty. v. Washington Dep't of Ecology*, 511 U.S. 700, 705 (1994) (defining antidegradation). The plaintiffs argue that under Section 303(d) the EPA must require the IWR to contain an antidegradation policy.

**A. Section 303(d)(2)**

Section 303(d)(1)(A) requires the FDEP to create a list of impaired waters that cannot reach "any water quality standard applicable to such waters" even after applying "technology-based effluent limitations"[6] prescribed by the EPA. Implementing Section 303(d), 40 C.F.R. § 130.7(b)(3) states, "For the purposes of listing waters . . . , the term 'water quality standard applicable to such waters' . . . refer[s] to those water quality standards established under section 303 of the Act,

---

[5] In the motion for summary judgment (Doc. 50), the plaintiffs studiedly misquote the letter by omitting the letter's several explicit mentions of the "three sets of rule amendments."

[6] Under Section 301(b)(1), the EPA promulgates an effluent limitation for each water body based on available technology.

- 6 -

including . . . antidegradation requirements." Therefore, under Section 130.7(b)(3), when creating the impaired waters list, the FDEP must consider Florida's "antidegradation requirements."[7] Under Section 303(d)(2), the EPA must periodically review the impaired waters list, and under 40 C.F.R. § 130.7(d)(2) the EPA may approve the impaired waters list "only if it meets the requirements of § 130.7(b)."

The plaintiffs argue that under Section 303(d)(1)(A) the impaired waters list "must include the assessment and evaluation of whether ambient waters are attaining applicable state antidegradation [water quality standards]."[8] (Doc. 50 at 3–4, 22) From this, the plaintiffs conclude that the IWR must comply with the same requirement. However, the plaintiffs argue neither that a portion of the IWR is the impaired waters list nor that a portion of the IWR "*in effect*" constitutes the impaired waters list. *See Florida Pub. Interest*, 386 F.3d at 1089–90 (directing the district court to find if the IWR "*in effect* . . . created new or revised water quality standards"). Rather, the plaintiffs argue that the IWR is a "state methodology to implement [Florida's water quality standard]." (Doc. 50 at 4)

---

[7] The FDEP argues that "there is no basis to 'consider' Florida's antidegradation policy in the context of listing decisions when Florida's antidegradation policy, like other States, is lawfully implemented through permitting decisions." (Doc. 51 at 18; Doc. 70 at 6) Because no portion of the IWR constitutes the impaired waters list, no occasion occurs to discuss whether the EPA must consider antidegradation during review of the impaired waters list.

[8] The plaintiffs' characterization of Section 303(d)'s antidegradation requirement as "antidegradation WQSs" (Doc. 50 at 18) confuses the relation between a water quality standard and an antidegradation policy.

A review of the IWR reveals no portion that is the impaired waters list or "*in effect*" constitutes the impaired waters list.  The IWR is codified in Chapter 62-303, Florida Administrative Code, which is entitled "Identification of Impaired Surface Waters."  Rule 62-303.100 states, "This chapter establishes a methodology to identify impaired waters that will be included on the [impaired waters list]." Section 303(d)(2) requires the EPA to review "the waters identified," that is, the impaired waters list, not a "methodology to identify impaired waters."  *See Florida Pub. Interest*, No. 4:02-cv-408, Doc. 185 at 6 ("Section 303(d) does not require states to adopt, or the EPA to review, regulations delineating how states will make their case-by-case listing . . . decisions.  Instead, the statute requires the EPA to review, on a waterbody by waterbody basis, a state's ultimate [impaired waters list] . . . determinations.").  Therefore, the plaintiffs' argument that the EPA violated Section 303(d)(2) fails.

### B. Section 303(d)(4)(B)

Section 303(d)(4)(B) states that, for waters not identified in the impaired waters list, "any water quality standard established under this section . . . may be revised only if such revision is subject to and consistent with the antidegradation policy established under this section."[9]  The plaintiffs argue that the EPA failed to

---

[9] In full, Section 303(d)(4)(B) states:

STANDARD ATTAINED.—For waters identified [in the impaired waters list] . . . , any effluent limitation based on a total maximum daily load or other waste load allocation established under this section, or any water quality

(continued...)

- 8 -

review the amended IWR "for consistency with" Florida's antidegradation policy. (Doc. 50 at 18)

The portion of the IWR that constitutes a new or revised water quality standard "is subject to and consistent with" Florida's antidegradation policy. The FDEP considers antidegradation only during a decision to issue, renew, or modify a permit to use waters identified in the impaired waters list.[10] As the 2008 Decision explains:

> [The portion] of the IWR [that constitutes a new or revised water quality standard] . . . define[s] the "ambient condition" or "level of protection" that the State would afford[] waters for purposes of making attainment decisions. An attainment decision is one where a state decides what it means to attain or to not attain any "water quality standard applicable to such waters" for purposes of establishing [total maximum daily loads] under section 303(d)(1)(A) of the Act . . . . [Total maximum daily loads], in turn, inform permit decisions . . . .

---

(...continued)
> standard established under this section, or any other permitting standard may be revised only if such revision is subject to and consistent with the antidegradation policy established under this section.

Relying on *Native Village of Point Hope v. EPA*, 3:11-cv-200, Doc. 92 at 25 (D. Alaska Sept. 14, 2012) (Burgess, J.), the FDEP argues that Section 303(d)(4)(B) requires EPA review of "any effluent limitation based on . . . any water quality standard," not "any water quality standard." However, because the section conspicuously repeats "or any," the statute clearly states that a revision of "any water quality standard" must be "subject to and consistent with" an antidegradation policy. *See PUD No. 1*, 511 U.S. at 705 ("[T]he Act permits the revision of certain effluent limitations or water quality standards 'only if such revision is subject to and consistent with the antidegradation policy . . . .'"); *Florida Pub. Interest*, 386 F.3d at 1073 ("[T]he state's water quality standards may only be revised if the change complies with the anti-degradation policy . . . ."). Even *Native Village*, 3:11-cv-200, Doc. 92 at 19, admits that Section 303(d)(4)(B)'s "parallel use of 'any' before 'effluent limitation based on a total maximum daily load or other waste load allocation,' 'water quality standard,' and 'other permitting standard' suggests that a revision to any one of those limits or standards requires antidegradation review."

[10] The FDEP adopted this method of implementing an antidegradation policy "through the permitting process" in 1989. (Doc. 70 at 4 n.1) This method governed in 2001 when the FDEP adopted the IWR.

- 9 -

(Doc. 53-7 at 12–13)  The FDEP enforces through a permit decision the portion of the IWR that constitutes a new or revised water quality standard.  *See Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992) ("The primary means for enforcing [water quality] standards is the [permit system].").  Under Chapter 62-302, Florida Administrative Code, in issuing, renewing, or modifying a permit, the FDEP must consider antidegradation.[11]  Therefore, the portion of the IWR that constitutes a new or revised water quality standard "is subject to and consistent with" Florida's antidegradation policy.

The Eleventh Circuit instructed the EPA to review the portion of the amended IWR that constitutes a new or revised water quality standard to determine "whether [the portion] complied with the requirements of the Clean Water Act, including its anti-degradation policy."  *Florida Pub. Interest*, 386 F.3d at 1078.  In response, the 2005 Decision states, "No [portion] of the IWR relates to antidegradation."

---

[11] For example, Rule 62-302.300 states:

> (16) If the Department finds that a new or existing discharge will reduce the quality of the receiving waters below the classification established for them or violate any Department rule or standard, it shall refuse to permit the discharge.
>
> (17) If the Department finds that a proposed new discharge or expansion of an existing discharge will not reduce the quality of the receiving waters below the classification established for them, it shall permit the discharge if such degradation is necessary or desirable under federal standards and under circumstances which are clearly in the public interest, and if all other Department requirements are met. . . .
>
> (18)(a) Except as provided in subparagraphs (b) and (c) of this paragraph, an applicant for either a general or generic permit or renewal of an existing permit for which no expansion of the discharge is proposed is not required to show that any degradation from the discharge is necessary or desirable under federal standards and under circumstances which are clearly in the public interest.

(Doc. 53-5 at 10 n.7) Similarly, the 2008 Decision states, "No [portion] of the IWR relates to anti-degradation" (Doc. 53-7 at 10), which certifies the IWR's compliance with Section 303(d)(4)(B).

**3. 40 C.F.R. § 131.6**

Implementing Section 303(c), 40 C.F.R. § 131.6 states that an antidegradation policy "must be included in each State's water quality standards submitted to EPA for review." The plaintiffs argue that the amended IWR contains no "antidegradation methodology for Florida's impaired water assessments."[12] (Doc. 50 at 18) However, *Natural Resources Defense Council, Inc. v. Fox*, 909 F. Supp. 153, 161 (S.D.N.Y. 1995) (Leisure, J.), explains:

> The EPA interprets 40 C.F.R. § 131.6 . . . to require only initial water quality standards to meet this requirement, and once an antidegradation policy has been approved, submitted revisions to the water quality standards need not each contain an antidegradation policy. . . . [T]he Court finds this interpretation . . . to be reasonable and entitled to deference.

Under Section 131.6, the FDEP need not include an antidegradation policy in each revision of Florida's water quality standard. The 2008 Decision, which reviews the portion of the amended IWR that constitutes a new or revised water quality standard, complies with Section 131.6.

---

[12] This argument lacks a supporting citation to the Clean Water Act or to a federal regulation. The only section in either the Clean Water Act or Title 40 of the Code of Federal Regulations (entitled "Protection of Environment") that offers plausible support for the argument is 40 C.F.R. § 131.6.

- 11 -

## CONCLUSION

The plaintiffs lack legal support for the argument that the 2008 Decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and for the argument that the 2008 Decision is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." No genuine issue of material fact remains. The plaintiffs' motion (Doc. 50) for summary judgment is **DENIED**, and the EPA's motion (Doc. 53) for summary judgment on both Count I and Count II is **GRANTED**. The clerk is directed (1) to enter judgment in favor of the defendants and against the plaintiffs on each count of the complaint, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on March 16, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE